IGNACIA S. MORENO
Assistant Attorney General

KENNETH ROONEY
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 514-9269
Fax: (202) 305-0506
E-mail: kenneth.rooney@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Paiute-Shoshone Indians of The Bishop Community of the Bishop Colony      ) <br> ) <br> ) <br> Plaintiff      ) <br> ) <br> v.      ) <br> ) <br> City of Los Angeles, *a California municipal corporation,*      ) <br> ) <br> United States of America, *et al.*      ) <br> ) <br> Defendants.      ) <br> ) | Case No. 1:06-cv-00736-LJO-GSA <br><br> **FEDERAL DEFENDANTS'** <br> **MEMORANDUM IN SUPPORT OF** <br> **MOTION TO DISMISS PURSUANT TO** <br> **12(B)(1) AND 12(B)(6)** <br><br> Date: March 26, 2012 <br> Time: 8:30 a.m. <br> Courtroom 4 |

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.    Statutory Background ........................................................................................2

    II.    Factual Background .........................................................................................5

PROCEDURAL BACKGROUND..........................................................................................6

Plaintiff's First Amended Complaint .....................................................................................8

STANDARDS OF REVIEW ..................................................................................................9

    I.    Rule 12(b)(1)....................................................................................................9

    II.    Rule 12(b)(6)..................................................................................................10

ARGUMENT .......................................................................................................................10

    I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF FAILS TO IDENTIFY ANY VALID WAIVER OF SOVEREIGN IMMUNITY AGAINST THE UNITED STATES ..................................................................................................11

        A.    The ICCA is the only waiver of sovereign immunity that existed for Plaintiff's historic claims, but that waiver of sovereign immunity expired more than sixty years ago......................................................................................13

            1.    Under the doctrine of the law of the case, the expiration of the ICCA's waiver of sovereign immunity deprives this court of subject Matter jurisdiction..................................................................13

            2.    The ICCA provided Plaintiff with their sole and exclusive remedy, and they cannot avoid the exclusivity bar of the ICCA by recasting the character of its relief ........................................................14

        B.    Plaintiff cites to no other statute that waives the United States' sovereign immunity .......................................................................................................15

            1.    28 U.S.C. § 1331, 1362, 2201, and 2202 Do Not Provide a Waiver Of Sovereign Immunity .......................................................................15

            2.    28 U.S.C. § 1361, the Mandamus Act, Does Not Provide A Waiver Of Sovereign Immunity In These Particular Circumstances ....................17

i

3.      The Waiver of Sovereign Immunity in Section 702 Does not Apply
        In These Particular Circumstances..........................................................18

        a.      The APA waiver of sovereign immunity cannot apply
                when statutes, such as the ICCA, preclude judicial
                review.....................................................................................19

        b.      In the absence of a discrete legal duty to act, Plaintiff cannot
                avail itself of the APA waiver of sovereign immunity .................20

C.      28 U.S.C. § 2401, the six year statute of limitations, deprives this Court
        subject matter jurisdiction .....................................................................15

II.     EVEN IF PLAINTIFF IDENTIFIES A VALID WAIVER OF SOVEREIGN IMMUNITY,
        PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF STATUTORY AND COMMON LAW
        TRUST DUTIES ..............................................................................................23

CONCLUSION.........................................................................................................28

# TABLE OF AUTHORITIES

## CASES

A.K. Management Co. v. San Manuel Band,
    789 F.2d 785 (9th Cir. 1986) .................................................................................26

Alexander v. Sandoval,
    532 U.S. 275 (2001).....................................................................................20

" Alliance To Save Mattaponi v. U.S. Army Corps of Eng'rs,
    515 F. Supp. 2d 1 (D.D.C. 2007) ..............................................................20

Arizona v. California,
    460 U.S. 605 (1983).....................................................................................13

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009).................................................................................10

Association of America Medical Colleges v. United States,
    217 F.3d 770 (9th Cir. 2000) ......................................................................10

Astoria Federal  Sav. & Loan Association v. Solimino,
    501 U.S. 104 (1991).....................................................................................11

Balistreri v. Pacifica Police Department,
    901 F.2d 696 (9th Cir. 1990) ......................................................................11

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007).....................................................................................11

Biotics Research Corp. v. Heckler,
    710 F.2d 1375 (9th Cir. 1983) ....................................................................10

Block v. Comty. Nutrition Institute,
    467 U.S. 340 (1984).....................................................................................19

Block v. North Dakota ex rel. Board Of University and School Lands,
    461 U.S. 273 (1983)...........................................................................12, 15, 18

Boling v. United States,
    220 F.3d 1365 (Fed. Cir. 2000)..................................................................24

Brown v. United States,
    86 F.3d 1554 (Fed. Cir. 1996)...............................................................27, 28

Brownell v. Ketcham Wire & Manufacturing Co.,
    211 F.2d 121 (9th Cir. 1954) ........................................................................16

Burns Ranches, Inc. v. U.S. Department of Interior,
    No. 2:11-cv-00741-MO, 2011 WL 5985040 (D. Or. Nov. 29, 2011) ..........................16

Countrywide Home Loans, Inc., v. Mortgage Guaranty Insurance Corp.,
    642 F.3d 849 (9th Cir. 2011) ........................................................................16

Daniels-Hall v. National Education Association,
    629 F.3d 992 (9th Cir. 2010) ........................................................................11

Dugan v. Rank,
    372 U.S. 609 (1963)......................................................................................17

Dunn & Black, P.S. v. United States,
    492 F.3d 1084 (9th Cir. 2007) ......................................................................16

Federal  Power Commission v. Tuscarora Indian Nation,
    362 U.S. 99 (1960)........................................................................................27

Federal Power Commission v. Tuscarora Indian Nation,
    362 U.S. 99 (1960)........................................................................................27

Gallo Cattle Co. v. U.S. Department of Agriculture,
    159 F.3d 1194 (9th Cir. 1998) ......................................................................21

Gros Ventre Tribe v. United States,
    469 F.3d 801 (9th Cir. 2006) ............................................................21, 22, 25

Heckler v. Chaney,
    470 U.S. 821 (1985)......................................................................................19

Hells Canyon Preservation Council v. U.S. Forest Serv.,
    593 F.3d 923 (9th Cir. 2010) ........................................................................22

High Country Citizens Alliance v. Clarke,
    454 F.3d 1177 (10th Cir. 2006) ....................................................................20

Hill v. United States,
    571 F.2d 1098 (9th Cir. 1978) ......................................................................17

Hou Hawaiians v. Cayetano,
    183 F.3d 945 (9th Cir. 1999) ........................................................................17

Hughes v. United States,
     953 F.2d 531 (9th Cir. 1992) ...............................................................................16

Inter Tribal Council of Arizona, Investment v. Babbitt,
     51 F.3d 199 ..........................................................................................................20

Jarrett v. Resor,
     426 F.2d 213 (9th Cir. 1970) ..........................................................................17, 18

Kokkonen v. Guardian Life Insurance Co.,
     511 U.S. 375 (1994)..............................................................................................10

Lam v. University of Hawaii,
     164 F.3d 1186 (9th Cir. 1998) ..............................................................................13

Legal Aid Society of Alameda Cnty. v. Brennan,
     608 F.2d 1319 (9th Cir. 1979) ..............................................................................18

Louis v. McCormick & Schmick Restaurant Corp.,
     460 F. Supp. 2d 1153 (C.D. Cal. 2006) ...............................................................11

Mack v. S. Bay Beer Distributings, Inc.,
     798 F.2d 1279 (9th Cir. 1986) ..............................................................................11

Manzarek v. St. Paul Fire & Marine Insurance Co.,
     519 F.3d 1025 (9th Cir. 2008) ..............................................................................11

Mendiondo v. Centinela Hospital Medical Ctr.,
     521 F.3d 1097 (9th Cir. 2008) ..............................................................................11

Montana Bank of Circle, N.A. v. United States,
     7 Cl. Ct. 601(1985) ...............................................................................................26

Moss v. U.S. Secret Serv.,
     572 F.3d 962 (9th Cir. 2009) ................................................................................11

National Treasury Employees Union v. Whipple,
     636 F. Supp. 2d 63 (D.D.C. 2009) .......................................................................11

National Wildlife Federation v. Andrus,
     642 F.2d 589 (D.C. Cir. 1980) .............................................................................25

Navajo Tribe v. New Mexico,
     809 F.2d 1455 (10th Cir. 1987) .....................................................................4, 7, 14

Nichols v. Hughes,

721 F.2d 657 (9th Cir. 1983) .................................................................................23

Norton v. Southern Utah Wilderness Alliance,
542 U.S. 55 (2004)....................................................................................22, 23

Oglala Sioux Tribe v. United States,
650 F.2d 140 (8th Cir. 1981) .............................................................................4

Oneida County, N.Y. v. Oneida Indian Nation of New York State,
470 U.S. 226 (1985).........................................................................................27

Orff v. United States,
545 U.S. 596 (2005).........................................................................................12

Otoe and Missouria Tribe of Indias v. United States,
131 F. Supp. 265 (Ct. Cl. 1955) .......................................................................4

Paiute - Shoshone Indians of the Bishop Cmty. of the Bishop Colony, Cal.v.
City of Los Angles,
WL 521403 (E.D. Cal. Feb. 15, 2007) ("Bishop I").............................. 4-7, 14

Paiute - Shoshone Indians of the Bishop Cmty. of the Bishop Colony, Cal.v.
City of Los Angles,
637 F.3d 993 (9th Cir. 2011). Feb. 15, 2007) ("Bishop II")......... 3, 7, 12-14, 16, 18, 20, 23

Pawnee v. United States,
830 F.2d 187 (Fed. Cir. 1987)........................................................................28

Pepper v. United States,
131 S. Ct. 1229 (2011)....................................................................................13

Piledrivers' Local Union Number 2375 v. Smith,
695 F.2d 390 (9th Cir. 1982) ..........................................................................17

Pittston Coal Grp. v. Sebben,
488 U.S. 105 (1988).........................................................................................17

Prairie Band of Pottawatomie Tribe of Indians v. Udall,
355 F.2d 364 (10th Cir. 1966) ........................................................................17

Presbyterian Church (U.S.A.) v. United States,
870 F.2d 518 (9th Cir. 1989) .....................................................................19, 21

Provident Tradesmens Bank & Trust Co. v. Patterson,
390 U.S. 102 (1968)...........................................................................................8

Safe Air for Everyone v. Meyer,
    373 F.3d 1035 (9th Cir. 2004) ...............................................................10

San Carlos Apache Tribe v. United States,
    272 F. Supp. 2d 860 .............................................................................24

In re Sanborn,
    148 U.S. 222 (1893)...............................................................................26

Scholder v. United States,
    428 F.2d 1123 (9th Cir. 1970) ...............................................................16

Seminole Nation v. United States,
    318 U.S. 629 (1943)...............................................................................18

Shoshone Bannock Tribes v. Reno,
    56 F.3d 1476 (D.C. Cir. 1995)..........................................................18, 25

Sisseton-Wahpeton Sioux Tribe v. United States,
    895 F.2d 588 (9th Cir. 1990) ....................................................7, 8, 12, 23

Smith v. Grimm,
    534 F.2d 1346 (9th Cir. 1976) ...............................................................17

St. Clair v. City of Chico,
    880 F.2d 199 (9th Cir. 1989) .................................................................10

Steel Co. v. Citizens for a Better Environment,
    523 U.S. 83 (1998).................................................................................9

Stoneridge Investment Partners v. Scientific-Atlanta, Inc.,
    552 U.S. 148 (2008)...............................................................................21

Thompson v. McCombe,
    99 F.3d 352 (9th Cir. 1996) ...................................................................10

Thornhill Publishing Co. v. General Telegraph & Electric Corp.,
    594 F.2d 730 (9th Cir. 1979) .................................................................10

United States v. Cherokee Nation of Oklahoma,
    480 U.S. 700 (1987)...............................................................................25

United States v. Cote,
    51 F.3d 178 (9th Cir. 1995) ...................................................................14

United States v. Dann,

470 U.S. 39 (1985) ................................................................................................3, 20

United States v. Idaho ex rel. Director, Idaho Department of Water Resource,
    508 U.S. 1 (1993) ..........................................................................................12

United States v. Jicarillia Apache Nation,
    131 S. Ct. 2313 (2011) ..................................................................................24

United States v. Mitchell,
    445 U.S. 535 (1980) ......................................................................................11

United States v. Mitchell,
    445 U.S. 535 (1980) ......................................................................................25

United States v. Mitchell,
    463 U.S. 206 (1983) ......................................................................................25

United States v. Navajo Nation,
    537 U.S. 488 (2003) ......................................................................................21

United States v. Navajo Nation,
    556 U.S. 287, 129 S. Ct. 1547 (2009) ..........................................................25

United States v. Navajo Nation,
    556 U.S. 287 (2009) ................................................................................21, 26

United States v. Park Place Associates, Ltd.,
    563 F.3d 907 (9th Cir. 2009) ..................................................................12, 15

United States v. Sherwood,
    312 U.S. 584 (1941) ................................................................................11, 12

United States v. Thrasher,
    483 F.3d 977 (9th Cir. 2007) ........................................................................14

Veterans for Common Sense v. Shinseki,
    644 F.3d 845 (9th Cir. 2011) ........................................................................21

Veterans for Common Sense v. Shinseki,
    663 F.3d 1033 (2011) ....................................................................................21

White Mountain Apache Tribe v. Clark,
    604 F. Supp. 185 (D. Ariz. 1984) ..................................................................4

Wisconsin Winnebago Business Committee v. Koberstein,
    762 F.2d 613 (7th Cir.1985) .........................................................................26

Wolfchild v. United States,
    96 Fed. Cl. 302 (Fed. Cl. 2010) ................................................27

## STATUTES

5 U.S.C. § 701(a) ................................................19

5 U.S.C. § 702(2) ................................................12, 15, 19

5 U.S.C. §706 (1) ................................................22

25 U.S.C. §§ 70 - 70n-2 ................................................3

25 U.S.C. § 81 ................................................25, 26

25 U.S.C. § 177 ................................................25, 26

25 U.S.C. § 398d ................................................25

25 U.S.C. § 415(a) ................................................25, 27

25 U.S.C. § 462 ................................................25, 27

28 U.S.C. §§ 1331 ................................................15

28 U.S.C. § 1361 ................................................17

28 U.S.C. § 1362 ................................................16

28 U.S.C. § 2201(a) ................................................16

28 U.S.C. § 2401(a) ................................................2, 23

50 Stat. 70 ................................................2, 5

60 Stat. 1049, 1050 & 1052 ................................................3, 4, 13, 20

Fed. R. Civ. P. 12(b)(1) ................................................9, 21, 28

Fed. R. Civ. P. 19 ................................................7

# INTRODUCTION

The United States moves to dismiss Plaintiff's First Amended Complaint, ECF No. 107, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  In the Amended Complaint, Plaintiff now brings two causes of action, both of which revolve around the United States' purported breach of "their statutory and common law trust obligation to protect the Tribe in its possession and use of the Bishop Tribal Lands," and "possession and use of the water and water rights appurtenant to the Bishop Tribal Lands."  Am. Compl. ¶¶ 33-34.  These claims are based, in part, on the United States "obligat[ion] to protect the Tribe's possessory interests in five tracts of Bishop Tribal Lands presently in the possession of the City of Los Angeles."  *Id.* at ¶ 17.  Those five tracts of land that constitute the "Bishop Tribal Lands," however, were exchanged in 1941 pursuant to an act of Congress.  *See* Act of Apr. 20, 1937, 50 Stat. 70.

Plaintiff's Amended Complaint should be dismissed for several reasons.  First and foremost, Plaintiff fails to identify any waiver of sovereign immunity to sue the United States.  Congress waived the United States' sovereign immunity for the historic claims Plaintiff presents with the passage of the Indian Claims Commission Act ("ICCA"), however, that waiver expired in 1951.  As the Ninth Circuit previously concluded, because Plaintiff failed to file a claim by 1951, "the ICCA states unequivocally that *no court* may adjudicate Plaintiff's claim; therefore, this Court "lacks subject matter jurisdiction over Plaintiff's untimely claim against the United States."  *Paiute – Shoshone Indians of the Bishop Cmty. of the Bishop Colony, Cal. v.City of Los Angeles*, 637 F.3d 993, 999 (9th Cir. 2011) ("Bishop II").  That holding is the law of the case, and Plaintiff cannot now relitigate the lack of jurisdiction.

Second, even if Plaintiff identified a valid waiver of sovereign immunity, the Ninth Circuit already concluded that Plaintiff's claims ripened in 1941.  Thus, the six year statute of limitations in 28 U.S.C. § 2401 deprives this Court of subject matter jurisdiction.  Finally, even if Plaintiff carries its burden and provides a valid waiver of sovereign immunity, and if that claim is not barred by Section 2401, Plaintiff fails to state a claim for breach of trust.  Plaintiff cites a litany of statutes that purportedly establish a trust relationship with the United States.  But

1  nowhere in this patchwork of statutes has Plaintiff identified a substantive source of law that

2  establishes the prescription that Plaintiff requests: The dispossession of the City of Los Angeles

3  of the lands exchanged in 1941.  Therefore, Plaintiff's Amended Complaint should be dismissed

4  pursuant to Rule 12(b)(1), and alternately under 12(b)(6).

5                                                **BACKGROUND**

6      **I.  Statutory Background**

7          In 1946, Congress enacted the Indian Claims Commission Act ("ICCA"), formerly

8  codified at 25 U.S.C. §§ 70 - 70n-2 (terminated September 30, 1978).  The ICCA created an

9  executive tribunal, the Indian Claims Commission, to hear and determine all tribal claims against

10  the United States that accrued before August 13, 1946.  *Bishop II*, 637 F.3d at 998.  Under the

11  ICCA, all claims that accrued prior to 1946 were required to be brought by August 13, 1951.  *See*

12  Act of Aug. 13, 1946, 60 Stat. 1049, 1052.  As the Supreme Court recounted in *United States v.*

13  *Dann*, "the chief purpose of the [ICCA was] to dispose of the Indian claims problem with

14  finality."  470 U.S. 39, 45 (1985) (quoting H.R. Rep. No. 79-1466, at 10 (1945)).

15          Thus, Congress vested the ICC with wide-ranging and exclusive jurisdiction to settle all

16  possible historic Indian claims.  The scope of the ICC's jurisdiction was so comprehensive that it

17  encompassed claims not otherwise cognizable in federal courts, including all legal, equitable and

18  moral claims.  Accordingly, the ICCA provided that the following five broad classes of claims:

19          The Commission shall hear and determine the following claims against the United
20          States on behalf of any Indian Tribe . . . (1) claims in law or equity arising under
            the Constitution, laws, treaties of the United States, and Executive Orders of the
21          President; (2) all other claims in law or equity, including those sounding in tort,
            with respect to which the claimant would have been entitled to sue in a court of
22          the United States if the United States was subject to suit; (3) claims which would
            result if the treaties, contracts, and agreements between the claimant and the
23          United States were revised on the ground of fraud, duress, unconscionable
            consideration, mutual or unilateral mistake, whether of law or fact, or any other
24          ground cognizable by a court of equity; (4) claims arising from the taking by the
            United States, whether as the result of a treaty of cession or otherwise, of lands
25          owned or occupied by the claimant without the payment for such lands of
            compensation agreed to by the claimant; and (5) claims based upon fair and
26          honorable dealings that are not recognized by an existing rule of law or equity.

27

28

1  *See* ICCA § 2, 60 Stat. at 1050.  Although some of these claims lacked legal or equitable basis

2  under existing law, Congress was instead "exercising its political function of creating certain

3  new causes of action . . . which would not have been possible, and are not possible . . . between

4  private individuals."  *Otoe and Missouria Tribe of Indias v. United States*, 131 F. Supp. 265,

5  269 (Ct. Cl. 1955).

6      This exceptionally broad grant of jurisdiction was expressly limited in two manners.

7  First, Congress' consent to be sued was unambiguously limited to a five year window.  For that

8  reason, any claim that accrued before August 13, 1946, and which was not filed with the ICC by

9  August 13, 1951, could not "thereafter be submitted to any court or administrative agency for

10 consideration."  ICCA § 12, 60 Stat. 1052; *White Mountain Apache Tribe v. Clark*, 604 F. Supp.

11 185, 187 (D. Ariz. 1984); *Navajo Tribe v.  New Mexico*, 809 F.2d 1455, 1460-61 (10th Cir.

12 1987); *Oglala Sioux Tribe v. United States*, 650 F.2d 140, 143 (8th Cir. 1981); *and* Wright &

13 Miller, 14A Federal Practice & Procedure § 3660 n.22 (collecting cases finding the ICCA to be a

14 Tribe's exclusive remedy).  The broad and unambiguous phrase "no claim existing" ensured that

15 no pre-1946 claim could be submitted, not only to the ICC, but also to *any* court, after 1951.

16     Second, Congress circumscribed the remedial scheme of the ICCA and limited the

17 available relief "to that which is compensable in money."  *Navajo Tribe*, 809 F.2d at 1461

18 (citation omitted).  Monetary compensation "was meant to be the *exclusive* remedy against the

19 United States."  *Paiute – Shoshone Indians of the Bishop Cmty. of the Bishop Colony, Cal.*, No.

20 1:06-cv-00736-OWW-LJO, 2007 WL 521403 at *16 (E.D. Cal. Feb. 15, 2007) ("Bishop I")

21 (emphasis in original).  As Judge Wanger reiterated upon rejecting Plaintiffs argument that other

22 equitable forms of relief were appropriate:

23     By authorizing the Ind ian Claims Commission-the only forum  in which Indian
       claims against the United States for land they once posses   sed could be heard-to
24     grant only monetary dam ages in satisfaction of Indian  claims, non-Indians were
       assured of continued possession regardless of the outcome of the litigation. *Relief
25     in the form of a declaratory judgment or injunction would have resulted in the
       radical remedy of dispossessing the dispossessors.*
26

27

28

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736          3

1   *Id.* at *17 (emphasis in original) (citing *Navajo Tribe*, 809 F.2d at 1467).  Thus, even if a

2   plaintiff had timely filed its claim under the ICCA, they "could not have quieted title in these

3   lands or maintained an action in ejectment . . . The Tribe simply would have had to accept just

4   monetary compensation if the Commission found their claim to title valid."  *Id.* at *16.

5   **II.  Factual Background**

6           The Honorable Judge Wanger in *Bishop I* and the Ninth Circuit (J. Graber, J. Callahan, J.

7   Bea) in *Bishop II*, provided a thorough discussion of the relevant history.  Accordingly, the

8   following factual background is provided only to aid this Court's consideration of the recently

9   filed amended complaint, which now seeks to join the United States.

10          ***The United States' acquisition of land for Plaintiffs' benefit from 1909 to 1924***

11          Since "time immemorial," Plaintiff, the Paiute-Shoshone Indians of the Bishop

12  Community of the Bishop Colony ("Bishop Paiute"), have resided in an area now called Owens

13  Valley in Inyo County, California.  *Bishop I*, 2007 WL 521403 at *1.  However, during the mid

14  19th century, non-Indian settlers began to move into the area and purchased large swaths of land,

15  which displaced members of the Bishop Paiute.  As a result, the United States acquired through

16  purchase and executive order five tracts of land for the Tribe, totaling approximately 1,030 acres.

17  *Id.*

18          ***Congressional authorization for the exchange of lands in 1937***

19          Despite the United States' purchase of those five tracts, by 1933, the City of Los Angeles

20  had purchased virtually all of the remaining land in the Owens valley for purposes of securing

21  water.  William Wood, *The Trajectory of Indian Country of Cal.: Rancherias, Villages, Pueblos,*

22  *Missions, Ranchos, Reservations, Colonies, & Rancherias*, 44 Tulsa L. Rev. 317, 360-61 (2008).

23  Accordingly, by the Act of April 20, 1937, 50 Stat. 70 ("the 1937 Act"), Congress authorized the

24  Secretary of the Interior to exchange land and water rights in the Owens Valley held by the

25  United States in trust for the Tribe, for land and water rights owned by the City.  Among the

26  conditions imposed by Congress were: The majority of the adult Indians entitled to use of the

27  land had to consent to the exchange; the exchange must include water rights appurtenant to the

28

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                        4

1  exchanged lands; and, the land and water rights conveyed by the United States to the City on

2  behalf of the Tribe could not exceed the value of the rights received.

3        Thus, on May 18, 1938, the City of Los Angeles and the Department of the Interior

4  executed an agreement providing for, *inter alia*, the exchange of 3,126 acres of federal land,

5  which included the Bishop Paiute's tribal land, for 1,511 acres of land held by the City.  *Bishop*

6  *I*, 2007 WL 521403 at *2-3.  Although the exchange contemplated less land, the deal provided

7  the Bishop with higher quality land and assured water rights.[1]  In July of 1941, the United States

8  officially effectuated the exchange by an executed deed and formally conveyed the old tribal

9  lands to the City of Los Angeles.  For the past seven decades, the City of Los Angeles has

10  occupied the area Plaintiff refers to as the "Bishop Tribal Lands."

11                    **PROCEDURAL BACKGROUND**

12        In 2006, Plaintiff first filed suit seeking the return of the original tribal lands, nearly fifty

13  five years after the expiration of the United States' waiver of sovereign immunity incorporated

14  into the ICCA.  Plaintiff did not join the United States, however, and opted to instead bring suit

15  solely against the City.  Among Plaintiff's theories of relief were alleged violations of the

16  Congressionally imposed conditions in the exchange, and "[b]ecause the conditions mandated by

17  Congress in the Act for conveyance of the Bishop Tribal Lands were not satisfied, the purported

18  transfer of those lands by the United States to the City was null and void."  Compl. ¶ 23 (ECF

19  No. 1).  Plaintiff requested this Court issue an order "ejecting the City from the Bishop Tribal

20  Lands and restoring the Tribe to possession."  *Id*.  Prayer for Relief, ¶ 1.  Because Plaintiff failed

21

22  _____

23  [1]        The original tribal lands were "rough and rocky and of poor soil fertility," *Id*. at *2, while
    the lands to be exchanged were "much more valuable for agricultural purposes by reason of the
24  topography and soil fertility." *Id*. at *3.  Moreover, while the original tracts of land included the
    right to receive 2,279.35 acre feet of water per year, almost 3,766.57 acre feet per year were
25  wasted as a result transportation losses to those tracts.  *Id*. at *2.  Accordingly, both parties
    agreed that it would be mutually advantageous, because "the new lands, irrigated with the water
26  right appurtenant to the old lands (including the United States share of the salvaged water,
    amounting to 3766.57 acre feet of water), would be more productive than the status quo ante."
27  *Id*. at *3.

28

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    5

1   to join the United States, the City of Los Angeles moved to dismiss the complaint under 12(b)(7)

2   on the basis that the United States was a required party under Rule 19.  ECF No. 61.

3          In opposition to the City's motion, Plaintiff did not dispute that it failed to timely file a

4   claim under the ICCA.  *Bishop I*, 2007 WL 521403, at *16.  Instead, Plaintiff countered that "the

5   ICCA only bars untimely actions for *money damages* and does not bar suits in which the remedy

6   sought is possession of land." *Id.* at *16 (emphasis in original).  Judge Wanger, however, was not

7   persuaded, finding that money damages under the ICCA were "meant to be the *exclusive* remedy

8   against the United States."  *Id.* (emphasis in the original) (citing *Navajo Tribe*, 809 F.2d at

9   1461).  Thus, by operation of the bar of the ICCA, and because Plaintiff failed to provide any

10  other valid waiver of sovereign immunity, this Court concluded that the United States could not

11  be feasibly joined in this action.  *Id.* at *16-17.

12         Following dismissal with leave to amend, Plaintiff opted to instead pursue an

13  interlocutory appeal, which the Ninth Circuit agreed to hear.  As to the first consideration under

14  Fed. R. Civ. P. 19, whether the United States had a "legally protected interest" that would be

15  "impaired or impeded," the Ninth Circuit concluded that there was "no doubt that the United

16  States is a required party."  *Bishop II*, 637 F.3d at 997.  The Court observed that even if a finder

17  of fact determined the United States violated the Act, Plaintiff would still "require an additional

18  order . . . requiring the United States to either to cede title to Plaintiff or to hold the land in trust

19  for Plaintiff's benefit."  *Id.* at 998.

20         Upon concluding the United States was a required party, the Ninth Circuit turned to the

21  second consideration:  Whether the United States could feasibly be joined.  At the outset, this

22  Court observed that "the United States has sovereign immunity;" thus, "no one, including Indian

23  tribes, may sue the United States without first obtaining permission from Congress."  *Id.* (citing

24  *Sisseton–Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 592 (9th Cir. 1990)).  With the

25  United States' sovereign immunity serving as the backdrop, the Ninth Circuit continued on to

26  examine whether Congress had waived sovereign immunity in these circumstance.

27

28

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    6

The Ninth Circuit concluded that "Congress waived its sovereign immunity over Plaintiff's claims many years ago," contained in the ICCA, but that "Plaintiff failed to take advantage of that waiver." *Id.* at 998. Thus, the Ninth Circuit held that:

> [T]he United States can not feasibly be joined in this action because the ICCA provided the exclusive remedy for Plaintiff's claim but Plaintiff failed to avail itself of that remedy. According to Plaintiff's complaint, it had a ripe claim against the United States by 1941, when the United States finalized its land exchange with the City, yet Plaintiff failed to file a claim with the Commission before 1951, the year in which the ICCA's statute of limitations expired.

*Id.* 998-99. Thus,

> In those circumstances, the ICCA states unequivocally that no court may adjudicate Plaintiff's claim. The district court therefore lacks jurisdiction over Plaintiff's untimely claim against the United States.

*Id.* 999. As a result, the Ninth Circuit concluded:

> In summary, we agree with our sister circuits [citing the Eighth and Tenth Circuits] that the ICCA provided the exclusive remedy for claims accrued by Indian tribes against the United States before 1946. Because Plaintiff had such a claim but failed to present it to the Indian Claims Commission within the statute of limitations prescribed by the ICCA, Plaintiff has lost its opportunity to litigate its dispute with the United States.

*Id.* at 1000.

Because the United States was a required party, the panel then turned to the final consideration under Rule 19(b) and concluded that the case "cannot proceed in equity and good conscience without the United States." *Id.* In balancing the four factors elucidated in *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 11 (1968), the panel concluded, *inter alia*, that Plaintiff's argument that it had no other avenue available for establishing its right to the Bishop Tribal Land was "a dilemma of Plaintiff's own making," because "Congress gave Plaintiff an opportunity to adjudicate its dispute with the United States but Plaintiff missed that opportunity." *Id.* The Court continued on and found that "[e]ven accepting Plaintiff's claim that it cannot obtain relief in any other forum today, the fact that Plaintiff at one time had a 'satisfactory alternative forum,'" found in the ICCA, "but failed to take advantage of it

1  significantly lessens the strength of Plaintiff's interest in having this action go forward." *Id.* at

2  1000-01 (citation omitted).  Consequently, the Ninth Circuit affirmed this Court's dismissal.

3  **Plaintiff's First Amended Complaint**

4  Following the Ninth Circuit's dismissal, Plaintiff filed their first amended complaint.

5  ECF No. 107.  In the Amended Complaint, Plaintiff makes a number of claims, all of which

6  revolve around the propriety of the exchange that occurred in 1941. Plaintiff contends that

7  "[b]ecause of the actions of the United States and its officers, the city of Los Angeles has

8  wrongfully possessed, occupied and used the Bishop Tribal lands beginning in 1941 and

9  continuing through the present."  ¶ 21. Thus, Plaintiffs conclude that "[b]ecause of the actions of

10  the United and its officers, the Tribe is presently unable to occupy and use the Bishop Tribal

11  Lands."  ¶ 22.

12  The actions of the United States provide the factual basis for the following three causes

13  of action:  1) Breach of statutory and common law trust duties, ¶¶ 32-34;  2) Declaratory

14  judgment that the United States has violated and is violating "their statutory, legal, fiduciary, and

15  trust obligations to the Tribe by failing to protect the Tribe in its possession and use of the

16  Bishop tribal lands; ¶¶ 35-37; and 3) declaratory judgment against the City of Los Angeles.  ¶¶

17  38-39.

18  In conjunction with the two causes of action against the United States, Plaintiff requests the

19  following relief: 1) declaratory judgment "that the federal defendants have and are violating their

20  statutory and common law fiduciary and trust duties to the Tribe by failing to put the Tribe in

21  possession of the Bishop Tribal Lands, and all appurtenant water and water rights;" and 2) a writ

22  of mandamus, "directing the federal defendants to comply with their statutory, legal, fiduciary

23  and trust duties to the Tribe and to take any and all action necessary to restore the Tribe to

24  possession of Bishop Tribal Lands and resources, including all water and water rights

25  appurtenant thereto." Am. Compl., Prayer for Relief, ¶¶ 1, 3.

26  It is now in response to this Amended Complaint that the United States respectfully

27  submits this Motion to Dismiss pursuant to Fed. R. Civ.  P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

28

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    8

1

**STANDARDS OF REVIEW**

2

**I.  Rule 12(b)(1)**

3   Jurisdiction is a threshold issue, which should be addressed prior to any consideration of

4   the merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998).  Federal

5   jurisdiction is properly challenged on a motion to dismiss under Fed. R. Civ. P. 12(b)(1).  The

6   plaintiff, as the party invoking federal jurisdiction, has the burden of proving its existence.  *See*

7   *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of

8   limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and

9   the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal

10  citations omitted); *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) (per curiam).

11  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court is not

12  necessarily limited to allegations in the complaint, but may consider materials outside the

13  pleadings.  *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).  A

14  motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either

15  the facial sufficiency of the allegations of the complaint or the existence of subject matter

16  jurisdiction in fact.  *See Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th

17  Cir. 1979).  If a motion to dismiss challenges the facial sufficiency of the complaint, the court

18  presumes the factual allegations of the complaint to be true and assesses whether these

19  allegations are sufficient as a matter of law to confer jurisdiction.  *See Safe Air for Everyone v.*

20  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A court, however, does not have to accept as true

21  allegations that are conclusory in nature.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1941 (2009).

22  By contrast, if a motion to dismiss challenges subject matter jurisdiction in fact, the court

23  "may consider the evidence presented with respect to the jurisdictional issue and . . . resolv[e]

24  factual disputes if necessary."  *Thornhill*, 594 F.2d at 733.  In resolving such factual disputes, the

25  Court does not presume that the allegations of the complaint are true, and plaintiff maintains the

26  burden of establishing subject matter jurisdiction through affidavits or other appropriate

27  evidence.  *See id.*; *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  The

28

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                        9

1   consideration of evidence concerning the issue of jurisdiction does not convert a Rule 12(b)(1)

2   motion into one for summary judgment. *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379

3   (9th Cir. 1983).

4   **II. Rule 12(b)(6)**

5          A motion to dismiss for failure to state a claim upon which relief can be granted under

6   Rule 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of

7   sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

8   F.2d 696, 699 (9th Cir. 1990).  Although at the pleading stage, the complaint does not have to

9   contain detailed factual allegations to survive a Rule 12(b)(6) dismissal, "it must provide more

10  than 'a formulaic recitation of the elements of a cause of action.'" *Mendiondo v. Centinela*

11  *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550

12  U.S. 544, 555 (2007)).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory

13  factual content, and reasonable inferences from that content, must be plausibly suggestive of a

14  claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.

15  2009) (internal quotation marks and citation omitted).  Moreover, a court need not accept as true

16  "allegations that contradict exhibits attached to the Complaint or matters properly subject to

17  judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or

18  unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)

19  (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).

20  When evaluating a motion to dismiss under Rule 12(b)(6), the court may properly review public

21  records, such as the Federal Register, without converting the motion to a motion for summary

22  judgment under Rule 56. *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir.

23  1986) *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104

24  (1991); *see Nat'l Treasury Employees Union v. Whipple*, 636 F. Supp. 2d 63, 78 n.8 (D.D.C.

25  2009); *Louis v. McCormick & Schmick Rest. Corp.*, 460 F. Supp. 2d 1153, 1155 (C.D. Cal.

26  2006).

27

28

1

**ARGUMENT**

2

I.   **THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF**

3      **FAILS TO IDENTIFY ANY VALID WAIVER OF SOVEREIGN IMMUNITY AGAINST**
        **THE UNITED STATES.**

4

5      "It is elementary that the United States, as sovereign, is immune from suit save as it

6   consents to be sued, and the terms of its consent to be sued in any court define that court's

7   jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing

8   *United States v. Sherwood,* 312 U.S. 584, 586 (1941) (internal punctuation omitted)).  Sovereign

9   immunity creates a jurisdictional bar to suit.  Absent a waiver of sovereign immunity, courts lack

10  jurisdiction over a suit against the United States. *Sherwood*, 312 U.S. at 586 ("[T]he terms of

11  [the United States'] consent to be sued in any court define that court's jurisdiction to entertain

12  the suit."); *see also U.S. Park Place Assocs., Ltd.,* 563 F.3d 907, 923–24 (9th Cir. 2009)

13  (discussing the "complex relationship" between the related but distinct issues of sovereign

14  immunity and subject matter jurisdiction).

        Claimants bringing suit against the United States must establish the existence of a waiver

15  of sovereign immunity as part of the overall burden of establishing subject matter jurisdiction.

16  No one, including Indian tribes, may sue the United States without first identifying an express

17  and unequivocal Congressional waiver of sovereign immunity. *Bishop II*, 637 F.3d at 998 (citing

18  *Sisseton–Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 592 (9th Cir.1990)).

19       In *United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res.*, 508 U.S. 1, 6-7 (1993),

20  the Supreme Court reaffirmed its frequent pronouncements that waivers of sovereign immunity

21  must be "unequivocally expressed in the statutory text . . . strictly construed in favor of the

22  United States . . . not enlarged beyond what the language of the statute requires."  (internal

23  quotations and citations omitted).  If a waiver is found to exist, it "must be strictly construed in

24  favor of the sovereign." *Orff v. United States*, 545 U.S. 596, 601-02 (2005).  "When waiver

25  legislation contains a statute of limitations, the limitations provision constitutes a condition on

26  the waiver of sovereign immunity," *Block v. North Dakota ex rel. Bd. Of Univ. and School*

27  *Lands*, 461 U.S. 273, 287 (1983) and "courts are reluctant to interpret the statute of limitations in

28

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    11

a manner that extends the waiver beyond that which Congress clearly intended." *Sisseton*, 895 F.2d at 592 (citations omitted).

Plaintiff fails to carry its burden and establish an applicable waiver of sovereign immunity.  Plaintiff relies on a number of statutes as conferring jurisdiction – 28 U.S.C. §§ 1331, 1361, 1362, 2201, 2202, and 5 U.S.C. § 702 – but their reliance is misplaced.  As discussed below, not a single statute cited by Plaintiffs provides a waiver of federal sovereign immunity in the case at bar.  The only express waiver was incorporated into the ICCA, but Congress' consent to suit expired in 1951.  Plaintiff's attempt to recast their claims as ones for declaratory judgment and the extraordinary writ of mandamus ultimately fails, as "the ICCA states unequivocally that no court may adjudicate Plaintiff's claim," and this Court "therefore lacks jurisdiction over Plaintiff's untimely claim against the United States."  *Bishop II*, 637 F.3d at 999.

### A. The ICCA is the only waiver of sovereign immunity that existed for Plaintiff's historic claims, but that waiver of sovereign immunity expired more than sixty years ago.

Should Plaintiff succeed in this lawsuit, they request this Court order the United States to dispossess the City of Los Angeles of the land it currently occupies as a result of the 1941 exchange.  *See* Am. Compl. Prayer for Relief, ¶ 3.  However, as established by the law of the case, the ICCA provided Plaintiff with their sole and exclusive remedy against the United States for the claimed historic wrongs, and their prior concession that they failed to avail themselves of this forum deprives this court of subject matter jurisdiction.

### 1. Under the doctrine of the law of the case, the expiration of the ICCA's waiver of sovereign immunity deprives this court of subject matter jurisdiction.

With the passage of the ICCA, Congress expressly waived its sovereign immunity over Plaintiff's claims until 1951, but any claims cognizable in the ICC were forever barred if not brought during that time period.  Plaintiff cannot now relitigate that they "failed to take advantage of that waiver."  *See Bishop* II, 637 F.3d at 998; *see also* 60 Stat. 1049, 1052.  As a result, the Ninth Circuit's conclusion that "[t]he district court therefore lacks jurisdiction over Plaintiff's untimely claim against the United States," *Bishop II*, 637 F.3d at 998, becomes the law

of the case and deprives this Court of subject matter jurisdiction.  *See Pepper v. United States*, 131 S.Ct. 1229, 1250 (2011) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983) (stating that the doctrine of the law of the case "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *see also Lam v. Univ. of Hawaii*, 164 F. 3d 1186, 1187 (9th Cir. 1998) (reversing a trial court judgment which failed to follow the law of the case established by a prior Ninth Circuit ruling in the case); *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007); *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995).[2]

Although Congress' consent to suit has since lapsed leaving Plaintiffs with no other forum, that is a dilemma of their own making, since "the ICCA provided the exclusive remedy for Plaintiff's claim and Plaintiff failed to avail itself of that remedy." *Bishop* II, 637 F.3d at 998.

> 2.  The ICCA provided Plaintiff with their sole and exclusive remedy, and they cannot avoid the exclusivity bar of the ICCA by recasting the character of its relief.

Plaintiff now requests that this Court render declaratory judgment that the United States "have and are violating their statutory and common law fiduciary and trust duties to the Tribe by failing to put the Tribe in possession of the Bishop Tribal Lands, and all appurtenant water and water rights."  It then follows from Plaintiff's Complaint that this Court then utilize the extraordinary writ of mandamus and direct the United States, "to take any and all action

---

[2]     In the alternative, Plaintiff is barred by issue preclusion.  *See Rapoport v. Republic of Mexico*, 619 F.Supp. 1476, 1480-81 (D. D.C. 1985) (following dismissal of an action for failure to join an indispensable party, collateral estoppel precluded relitigation of the indispensability issue in another action); *In re Sonus v. Networks, Inc., Shareholder Derivative Litigation*, 499 F.3d 47, 60 (1st Cir. 2007) (observing that under the modern view of issue preclusion, "even adjudications such as dismissal for lack of jurisdiction or failure to join an indispensable party, which are expressly denominated in Rule 41(b) as not being 'on the merits,' are entitled to issue preclusive effect."); *accord Baris v. Sulpico Lines, Inc.*, 74 F.3d 567, 571 (5th Cir. 1996); *see also Mendoza v. United States*, 464 U.S. 154, 158 (1984) (observing that the doctrine of collateral estoppel "serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.").

1    necessary to restore the tribe to possession of Bishop Tribal Lands and resources, including all

2    water and water rights appurtenant thereto."  Prayer for Relief, ¶¶ 1, 3.

3           But the manner in which Plaintiff molds the character of relief is of little consequence,

4    because it is the "underlying substantive claim-not the character of relief requested by the Tribe-

5    must determine the Commission's jurisdiction." *Navajo Tribe*, 809 F.2d at 1468.  "If the

6    character of the relief sought were determinative, the ICCA's express policy of finality could be

7    undermined by any Indian tribe that, having failed to pursue its remedy under the ICCA, now

8    prefers the return of its lands to money damages."  *Id.*  Indeed, this Court concluded that

9    monetary compensation "was meant to be the *exclusive* remedy against the United States."

10   *Bishop I*, 2007 WL 521403, at *16.

11          Here, there can be no doubt that the underlying claim continues to revolve around a

12   belated challenge to the propriety of the 1941 exchange.  For example, Plaintiff avers that

13   "[b]ecause of the actions of the United States and its officers, the city of Los Angeles wrongfully

14   possessed, occupied and used the Bishop Tribal Lands beginning in 1941 and continuing through

15   the present." Am. Compl. ¶ 21.  But this Court cannot reach the question of the validity of any

16   actions of the United States causing the City's continuing occupancy without determining the

17   culpability of the United States with regard to the underlying 1941 exchange. Therefore, based

18   on the face of Plaintiff's complaint, it had a ripe claim against the United States by 1941, when

19   the United States finalized its land exchange with the City.  Because Plaintiff was ostensibly

20   aware by 1941 of the purported unlawful nature of the exchange but failed to present it to the

21   Indian Claims Commission within the statute of limitations prescribed by the ICCA, Plaintiff has

22   "lost its opportunity to litigate its dispute with the United States."  *Bishop II*.

23          Plaintiff cannot avoid the exclusivity bar of the ICCA by recasting the character of relief

24   it seeks; indeed, "[i]t would require the suspension of disbelief to ascribe to Congress the design

25   to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Block*,

26   461 U.S. at 285 (citation omitted).

27

28

**B. Plaintiff cites to no other statute that waives the United States' sovereign immunity.**

Plaintiff take the position that this Court has subject matter jurisdiction based on the recitation of a string of statutes – 28 U.S.C. §§ 1331, 1361, 1362, 2201, 2202 – but none of these statutes provide Plaintiff with the requisite waiver of the United States' sovereign immunity. To the extent Plaintiff relies on the waiver of sovereign immunity incorporated within the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, that waiver is not applicable where the ICCA forbids suit on any pre-1946 claim in *any* court.

1. 28 U.S.C. § 1331, 1362, 2201, and 2202 do not provide a waiver of sovereign immunity.

Plaintiff first cites the general jurisdictional statutes of 28 U.S.C. §§ 1331 and 1362 as conferring jurisdiction, yet neither of these statutes constitute a waiver of sovereign immunity. 28 U.S.C. § 1331, the general federal question statute, merely grants district courts original jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." It is well settled that Section 1331 cannot by itself provide a waiver of federal government's sovereign immunity. *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 923 (9th Cir. 2009); *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007); *Hughes v. United States*, 953 F.2d 531, 539 n.4 (9th Cir. 1992).

Nor does 28 U.S.C. § 1362 provide an independent waiver of sovereign immunity. "Section 1362 merely grants jurisdiction to the district courts to adjudicate civil actions by Indian tribes so long as no other jurisdictional bar prohibits the courts from hearing those actions." *Bishop II*, 637 F.3d at 1000. The Ninth Circuit already "decline[d] Plaintiff's sweeping invitation to read § 1362 as waiving sovereign immunity over every action brought by an Indian tribe against the United States when the statute says nothing about either sovereign immunity or actions against the United States." *Id.* at 999-1000; *Scholder v. United States*, 428 F.2d 1123, 1125 (9th Cir. 1970). Accordingly, Plaintiff's reliance on § 1362 is similarly unavailing.

Plaintiffs' reliance on the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 is also misplaced. Section 2201 provides that, "[i]n a case of actual controversy *within its jurisdiction*,

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    15

1   except with respect to [certain federal tax and civil actions] any court of the United States, upon

2   the filing of an appropriate pleading, may declare the rights and other legal relations of any

3   interested party seeking such declaration, whether or not further relief is or could be sought."  28

4   U.S.C. § 2201(a) (emphasis added).  But section 2201 does not constitute the United States'

5   consent to be sued.  *See Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128 (9th Cir.

6   1954).  The Declaratory Judgment Act "merely grants an additional remedy in cases where

7   jurisdiction already exists in the court."  *Id.*; *see also Countrywide Home Loans, Inc., v.*

8   *Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011) ("The DJA . . . in no way modifies

9   the district court's jurisdiction, which must properly exist independent of the DJA.").  "The fact

10  that a court may grant declaratory relief . . . in a case otherwise within the court's jurisdiction

11  does not imply, let alone expressly state, that the United States has waived its immunity for all

12  declaratory relief claims."  *Burns Ranches, Inc. v. U.S. Dep't of Interior*, No. 2:11–cv–00741–

13  MO, 2011 WL 5985040, at *2 (D. Or. Nov. 29, 2011) (collecting cases finding that section 2201

14  does not waive the United States's sovereign immunity).

15          2.  28 U.S.C. § 1361, the Mandamus Act, Does Not Provide A Waiver
16              of Sovereign Immunity In These Particular Circumstances.

17          Plaintiff also claims that this Court has jurisdiction under the Mandamus Act.  *See* 28

18  U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of

19  mandamus to compel an officer or employee of the United States or any agency thereof to

20  perform a duty owed to the plaintiff.").  But this claim is also misguided, for it is well-settled in

21  this Circuit that the Mandamus Act does not, by itself, waive the United States' sovereign

22  immunity.  *See Hou Hawaiians v. Cayetano*, 183 F.3d 945, 947 (9th Cir. 1999); *Hill v. United*

23  *States*, 571 F.2d 1098, 1101 n.5 (9th Cir. 1978); *Smith v. Grimm,* 534 F.2d 1346, 1352 n.9 (9th

24  Cir. 1976) ("The mandamus statute, 28 U.S.C. § 1361, is not a consent to suit by the

25  sovereign").  Although suits against specific officers may be permissible in limited

26  circumstances, "[s]uits nominally against government officers may in reality be against the

27  sovereign."  *Id.* at 1351 n.6 (citing *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

28

1    Furthermore, mandamus is considered an extraordinary remedy, available only in narrow

2    circumstances. *See Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988). "[A] writ may not

3    issue under section 1361 unless it appears that the claim is clear and certain and the duty of the

4    officer is ministerial and so plainly prescribed as to be free from doubt." *Jarrett v. Resor*, 426

5    F.2d 213, 216 (9th Cir. 1970) (citing, with approval, *Prairie Band of Pottawatomie Tribe of*

6    *Indians v. Udall*, 355 F.2d 364, 367 (10th Cir. 1966)); *accord Smith v. Grimm*, 534 F.2d at 1352.

7    Even assuming Plaintiffs can establish a clear right to relief and the United States's clear duty to

8    act, mandamus jurisdiction still exists only if "no other adequate remedy is available." *See*

9    *Piledrivers' Local Union No. 2375 v. Smith*, 695 F.2d 390, 392 (9th Cir. 1982).

10    Assuming *arguendo* Plaintiff identified a valid waiver of the United States' sovereign

11    immunity, which they cannot, Plaintiff's request for the extraordinary writ of mandamus fails for

12    two reasons.  First, there is no legal basis that imposes upon the Assistant Secretary the duty to

13    "take and all action necessary to restore the Tribe to possession of Bishop Tribal Lands and

14    resources, including all water and water rights appurtenant thereto."  Am. Compl., Prayer for

15    Relief, ¶ 3.  Indeed, requiring the Assistant Secretary to forcefully dispossess the City of Los

16    Angeles of the land it currently occupies is neither ministerial nor free from doubt; actions taken

17    against third parties are distinctly discretionary.  *Shoshone Bannock Tribes v. Reno*, 56 F.3d

18    1476, 1480 (D.C. Cir. 1995); *Seminole Nation v. United States*, 318 U.S. 629, 630-31 (1943);

19    *compare Jarrett v. Resor*, 426 F.2d at 216-17 (concluding that mandamus was inappropriate

20    where plaintiff's complaint did not include any allegations that the individual defendants failed

21    to fulfill a plainly described ministerial duty), *with Legal Aid Soc'y of Alameda Cnty. v. Brennan*,

22    608 F.2d 1319, 1331-32 (9th Cir. 1979) (finding that appellees/plaintiffs were entitled to the writ

23    of mandamus where the regulatory duties imposed upon the compliance officers were clear and

24    ministerial).

25    Second, Plaintiffs' use of the Mandamus Act is an improper attempt to evade the

26    exclusivity bar of ICCA.  As discussed *supra*, Plaintiff's sole and exclusive remedy was under

27    the ICCA, *Bishop II*, 637 F.3d at 998, and they cannot sidestep the ICCA's expired statute of

28

limitations by now suing federal officials. *See Block*, 461 U.S. at 285. Allowing Plaintiffs to elude the ICCA by recasting their claims as an action for mandamus would thwart Congress's intent to provide finality, and "an unlimited number of suits involving stale claims might be instituted." *Id.* (finding that plaintiffs could not elude Quiet Title Act's statute of limitations by framing their complaint as one seeking a writ of mandamus).

Because the Mandamus Act neither waives the United States sovereign immunity nor provides an appropriate basis of jurisdiction, Plaintiff's claims should be dismissed.

3.  The Waiver of Sovereign Immunity in Section 702 Does not Apply In These Particular Circumstances.

Plaintiff brings suit "seeking relief for other than money damages against agencies of the United States and its officers," Am. Compl. ¶ 2, presumably in an attempt to utilize the waiver of sovereign immunity embodied in Section 702 of the APA. Plaintiff, however, cannot evade the exclusivity bar of the ICCA by bringing suit under the APA. First, the ICCA unequivocally precluded subsequent judicial review for those claims that should have been brought before the ICC. Second, Plaintiff cannot take advantage of the APA waiver in the absence of a discrete legal action the government is required to take.

a.  *The APA waiver of sovereign immunity cannot apply when statutes, such as the ICCA, preclude judicial review.*

Under the law of the case, this Court lacks subject matter jurisdiction over any claims that could have been brought before the Indian Claims Commission. Plaintiff, however, appears to advance the APA as an alternative source for a waiver of sovereign immunity. The waiver of sovereign immunity in Section 702 provides, in pertinent part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    18

5 U.S.C. § 702.  The APA, however, withdraws  that waiver of sovereign immunity when the  relevant  statute,  in this case th  e  ICCA, "preclud es  judicial  review."   5 U.S.C. § 701(a); *see Heckler v. Chaney*, 470 U.S. 821, 828 (1985) (before bringing a claim under § 702, "a party must first clear the hurdle of § 701(a)").

Although 702 contains a contains a limited waiver of the United States' sovereign immunity as it pertains to non-monetary actions against the United States, *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 524-25 (9th Cir. 1989), the waiver of sovereign immunity does not apply where a particular statute "precludes judicial review."[3]  "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Comty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).

Here, the language of the ICCA is unmistakable:  "The Commission shall receive claims for a period of five years . . . and no claim existing before such date but not presented within such period may **thereafter be submitted to any court or administrative agency for consideration** . . . ." ICCA § 12, 60 Stat. 1052 (emphasis added).  The broad and unambiguous phrase "no claim existing" ensured that no pre-1946 claim could be submitted, not only to the ICC, but also to *any* court, after 1951.  This reading is in line with the intent of the ICCA, which was to dispose of the Indian claims problem with finality.  *United States v. Dann*, 470 U.S. 39, 45 (1985) ("the chief purpose of the [ICCA was] to dispose of the Indian claims problem with finality.") (citation omitted).

The ICCA states "unequivocally that no court may adjudicate Plaintiff's claim," *Bishop II*, 637 F.3d at 999, and Plaintiffs cannot avoid the exclusivity bar of the ICCA via reliance on

---

[3]      Relatedly, 5 U.S.C. § 702(2) provides that nothing in the APA "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."

the APA.  The APA "does not provide a back door for plaintiffs to raise claims" where other statutes expressly "disallow such claims."  *Alliance To Save Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 6 (D.D.C. 2007); *see also e.g.*, *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177 (10th Cir. 2006) (following an extensive review of the legislative history and purpose underlying the 1872 Mining Law, finding that "[d]espite the presumption of reviewability, it is fairly discernable here, after consideration of all the *Block* factors, that Congress, when it enacted the 1872 Mining Law, intended to preclude judicial review . . . ."); *Inter Tribal Council of Arizona, Inv. v. Babbitt*, 51 F.3d 199, 203 (9th Cir. 1995) (finding the "structure, legislative history and objectives of the [statute] support the conclusion that the actions challenged by the Tribes are shielded from judicial review" under the APA).

      b.   *In the absence of a discrete legal duty to act, Plaintiff cannot avail itself of the APA waiver of sovereign immunity.*

As an initial matter, before Plaintiff invokes the waiver of sovereign immunity embodied in § 702 of the APA, the Tribe must first identify a private right of action in some statute.  *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (stating that private rights of action to enforce federal law must be created by Congress, and without it, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."); *see, e.g., Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 150 (2008) (affirming dismissal under Fed. R. Civ. P. 12(b)(6) because the implied right of action there did not reach defendants' conduct).  The threshold requirement that a tribe identify a private right of action grounded upon positive law applies with equal force in the context of the United States' trust obligations.  As the Ninth Circuit has reiterated, "[b]ecause the trust obligation cannot be independently enforced, the Tribes need to rely on statutes as the source of their substantive rights." *Gros Ventre Tribe v. United States*, 469 F.3d 801, 808 n.7 (9th Cir. 2006); *see United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) ("*Navajo I*") (Plaintiff must base its claim for relief on a "specific rights-creating or duty imposing statutory or regulatory prescription[ ]");  *United States v. Navajo Nation*, 556 U.S. 287, 296 (2009)

1  ("*Navajo II*") (the tribe must identify a "specific rights-creating or duty-imposing statutory or

2  regulatory prescription").

3      If Plaintiff identifies an independent private right action embodied in the Constitution,

4  statutes, or regulations, then the § 702 waiver may apply and is not limited by the strictures of

5  "agency action" as defined by the APA.  *See Presbyterian Church*, 870 F.2d at 524-26.[4]

6  However, when the litany of statutes that Plaintiff relies upon do not authorize a private right of

7  action, then Plaintiff can avail themselves of the Section 702 waiver, but "the Tribes must state

8  their claims within the confines of the APA."  *Gros Ventre*, 469 F.3d at 809.  Because Plaintiff

9  fails to state a cognizable claim under the APA § 706(1), agency action unlawfully withheld, the

10  Section 702 waiver is inapplicable.

11      The Tribe appears to assert, primarily, a claim under Section 706(1) of the APA, 5 U.S.C.

12  §706 (1), to compel agency action unlawfully withheld.  *See* Am. Compl. ¶ 30 ("Since assuming

13  office on May 22, 2009, Defendant Echo Hawk has continuously failed to take the action

14  necessary to remove the city of Los Angeles and place the Tribe in possession of the Bishop

15  Tribal Lands as expressly required by the common law and statutory trust duty . . . .").  Under

16  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) ("*SUWA*"), however, the

17  Supreme Court stated that "[a failure to act claim] under [5 U.S.C.] § 706(1) can proceed only

18

19  _____

20  [4]    There exists conflict in this circuit between *Presbyterian Church*, 870 F.2d 518 and *Gallo
    Cattle Co. v. U.S. Department of Agriculture*, 159 F.3d 1194 (9th Cir. 1998), which implicates
21  the extent to which the waiver of sovereign immunity in § 702 is limited by the constraints of §
    704 when Plaintiffs bring suit on an *independent private right of action* outside the APA – such
22  as constitutional claims, as in *Presbyterian.* Although *Veterans for Common Sense v. Shinseki*,
    644 F.3d 845 (9th Cir. 2011) resolved this conflict, rehearing *en banc* was granted on November
23  16, 2011, and, as a result, that opinion "shall not be cited as precedent by or to any court of the
    Ninth Circuit."  *Veterans for Common Sense v. Shinseki*, 663 F.3d 1033 (2011).  This conflict,
24  however, is not implicated by the present cause of action, "because the statutes that the Tribes
    cite authorize no private right of action," therefore, Plaintiff must "state their claims within the
25  confines of the APA."  *Gros Ventre*, 469 F.3d at 809 (abstaining from addressing the conflict
    between *Presbyterian* and *Gallo Cattle* where the treaties and statutes relied upon failed to
26  provide a private right of action in a breach of trust case).

27

28

1    where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to

2    take." *Id*. at 64; *accord Gros Ventre*, 469 F.3d at 814.  Moreover, that action must be "ministerial

3    or non-discretionary."  *Id.* at 63.

4           Here, the Tribe has neither identified any final agency action for which they seek review

5    nor sufficiently alleged that Defendants have failed to take any discrete final agency action

6    required by law.  Plaintiff provides no legal basis which compels the Assistant Secretary to take

7    the "ministerial" and "discrete" act of "remov[ing] the city of Los Angeles and place the Tribe in

8    possession of the Bishop Tribal Lands."  Am. Compl. ¶ 30.  Indeed, such a drastic remedy

9    ignores the general principle that a court's ability to "compel agency action is carefully

10   circumscribed to situations where an agency has ignored a specific legislative command."  *Hells*

11   *Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (internal quotation

12   marks omitted).

13          Furthermore, Plaintiff's general allegation that the federal government failed to act is not

14   grounded upon discrete agency action that it is required to take, but is instead premised on

15   citation to a number of statutes that impose, at most, only broad statutory mandates.  *See infra*

16   Section II.  The Supreme Court squarely rejected exactly that attack on agency action in *SUWA*

17   and concluded that courts do not have the authority to "enter general orders compelling

18   compliance with broad statutory mandates." 542 U.S. at 66.  To the extent Plaintiff contends the

19   Assistant Secretary has unduly delayed in removing the city of Los Angeles from the land it

20   currently occupies, "a delay cannot be unreasonable with respect to action that is not required."

21   *Id*. at 63, n.1. The Tribe has not alleged, and cannot allege, that Defendants owe it any such

22   action.  Hence, the Tribe fails to adhere to the procedural strictures of Section 706(1) and cannot

23   avail itself of the Section 702 waiver of sovereign immunity.

24          **C.  28 U.S.C. § 2401, the six year statute of limitations, deprives this Court of**
            **jurisdiction.**

25

26          Even if Plaintiff identifies a waiver of sovereign immunity, their present claims would

27   still be time-barred by the general six-year statute of limitations for civil actions against the

28

1   United States.[5]   Plaintiff failed to bring their suit within the six year period of limitations, and

2   "plaintiff's failure . . . is not simply a waivable defense; it deprives the court of jurisdiction to

3   entertain the action."  *Sisseton*, 895 F.2d at 591.

4          Plaintiffs have presented no argument explaining why they could not assert their claim

5   within six years of its accrual in 1941.  "In federal court, a cause of action accrues when an

6   injury is discovered or should have been discovered through the exercise of reasonable

7   diligence."  *Nichols v. Hughes*, 721 F.2d 657, 659 (9th Cir. 1983); *accord* 1-5 Cohen's

8   Handbook of Federal Indian Law § 5.06 (citations omitted) ("In a breach of trust claim, the

9   statute of limitations begins to run when the trustee repudiates the trust and the beneficiary has

10  knowledge of the repudiation.").  Nor can Plaintiff evade the jurisdictional bar of § 2401 by

11  alleging that the Assistant Secretary has "continuously failed to take the action necessary to

12  remove the City of Los Angeles" since assuming office in 2009.  Am Compl. ¶ 30.  The origin of

13  Plaintiff's injury occurred with the transfer of their land in 1941, and Plaintiff cannot deny their

14  knowledge of the alleged injury at that time.  *See Bishop II*, 637 F.3d at 998-99 ("According to

15  Plaintiff's complaint, it had a ripe claim against the United States by 1941, when the United

16  States finalized its land exchange with the City . . . .").[6]  Because they failed to bring this cause

17  of action within six years of its accrual in 1941, Plaintiffs' claims are barred by Section 2401.

18      **II.**     **EVEN IF PLAINTIFF IDENTIFIES A VALID WAIVER OF SOVEREIGN IMMUNITY,**
            **PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF STATUTORY AND**
19          **COMMON LAW TRUST DUTIES.**

20          In counts one and two of its amended complaint, Plaintiff identifies a litany of statutes

21  and alleges that, taken together, they establish a fiduciary trust relationship between the Tribe

22

23  _____

24  [5]     Section 2401 provides that "[e]xcept [certain public contracts disputes], every civil action
    commenced against the United States shall be barred unless the complaint is filed within six
25  years after the right of action first accrues."  28 U.S.C. § 2401(a).
    [6]     The continuing claim doctrine provides Plaintiff with no relief from Section 2401, either,
26  because "[t]he doctrine does not apply in cases where a single governmental action causes a
    series of deleterious effects, even though those effects may extend long after the initial
27  governmental breach."  *San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860, 896-97
    (quoting *Boling v. United States*, 220 F.3d 1365, 1373-74 (Fed. Cir. 2000)).
28

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    23

1   and the United States, such that this Court can direct the government "to comply with their

2   statutory, legal, fiduciary and trust duties to the Tribe and to take any and all action necessary to

3   restore the Tribe to possession of Bishop Tribal Lands and resources, including all water and

4   water rights appurtenant thereto." Am. Compl., Prayer for Relief, ¶ 3.  However, nowhere in this

5   patchwork of statutes has Plaintiff identified a particular substantive source of law that requires

6   the United States to dispossess the City of Los Angeles of the lands exchanged in 1941.

7        Unlike private trustees for whom common law defines their trust duties, the United States

8   need only comply with specific statutory obligations.  *United States v. Jicarilla Apache Nation*,

9   131 S. Ct. 2313, 2323 (2011) ("The Government, of course, is not a private trustee.  Though the

10  relevant statutes denominate the relationship between the Government and the Indians a 'trust,'. .

11  . . that trust is defined and governed by statutes rather than the common law.").  Indeed, "[t]he

12  Government assumes Indian trust responsibilities only to the extent it expressly accepts those

13  responsibilities by statute."  *Id.* at 2325.  Because the United States is a statutory trustee, not a

14  common law trustee, any alleged breaches of trust by the United States must be rooted in a

15  specific substantive law, not mere general allegations.  *Id*.  As the D.C. Circuit stated in

16  *Shoshone Bannock Tribes v. Reno*,

17          While it is true tha t the United Sta tes acts in a fiduciary capacity in its dealing s
             with Indian tribal property,  *United States v. Cherokee Nation of Oklahoma,* 480
18          U.S.  700, 707 (1987), it is also true        that the governm ent's fiduciary
             responsibilities  necessarily dep end  on  the  substantive laws creatin  g those
19          obligations. *United States v. Mitchell,* 463 U.S. 206, 224–25 (1983) ( *Mitchell II* );
             *United States v. Mitchell,* 445 U.S. 535, 542 (1980) ( *Mitchell I* ). We agree with
20          the  district court that an Indian trib    e  cannot force the governm  ent  to take a
             specific  action unless a treaty, statute or     agreement  imposes,  expressly or by
21          implication,  that duty. " Without an  unambiguous  provision by Congress that
             clearly outlines a federal trust responsibil ity, courts must appreciate that whatever
22          fiduciary  obligation otherwise exists, it is a li mited one only." *National Wildlife*
             *Fed'n v. Andrus,* 642 F.2d 589, 612 (D.C. Cir. 1980).
23

24

25  56 F.3d 1476, 1482, (D.C. Cir. 1995); *accord Gros Ventre*,469 F.3d at 810.

26        As it now stands, "unless there is a specific duty that has been placed on the government

27  with respect to Indians, [the government's general trust obligation] is discharged by [the

28  government's] compliance with general regulations and statutes not specifically aimed at

1    protecting Indian tribes." *Id.* at 809 (quoting *Morongo Band of Mission Indians v. F.A.A.*, 161

2    F.3d 569, 574 (9th Cir. 1998)).  Thus, at a minimum, a Tribe must "identify a specific,

3    applicable, trust-creating statute or regulation that the Government violated" to establish the

4    existence of a fiduciary duty.  *Navajo II*, 556 U.S. at 288.  Indeed, "an Indian tribe cannot force

5    the government to take a specific action unless a treaty, statute or agreement imposes, expressly

6    or by implication, that duty."  *Shoshone Bannock Tribes*, 56 F.3d at 1482 (cited by *Gros Ventre*,

7    469 F.3d at 810).

8         In *Navajo Nation II*, the Supreme Court recently reaffirmed that only "*if* a plaintiff

9    identifies such a prescription, and *if* that prescription bears the hallmarks of a 'conventional

10   fiduciary relationship,' *then* trust principles (including any such principles premised on 'control')

11   could play a role in "inferring that the trust obligation [is] enforceable by damages."  556 U.S. at

12   301 (citations omitted, emphasis in original).  However, when "the Tribe cannot identify a

13   specific, applicable, trust-creating statute or regulation that the Government violated . . . neither

14   the Government's 'control' over [Indian assets] nor common-law trust principles matter." *Id.* at

15   302.

16        Plaintiff's recitation of sundry statutes – 25 U.S.C. § 81; 25 U.S.C § 177; 25 U.S.C. §

17   398d; 25 U.S.C. § 462; and 25 U.S.C. § 415 – is bereft of any legal underpinning, and Plaintiff

18   fails to tie any individual allegations to those statutes.  Where Plaintiff fails to "identify a

19   substantive source of law that establishes specific fiduciary or other duties, and allege that the

20   Government has failed faithfully to perform those duties," *Navajo* II, 556 U.S. at 290 (citation

21   omitted), dismissal is warranted.

22        Plaintiff first turns to 25 U.S.C. § 81,[7] but to no avail.  Section 81 was enacted in 1871 by

23   Congress with the intent to protect the Indians from "improvident and unconscionable contracts."

24   *A.K. Mgmt. Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785, 787 (9th Cir. 1986)

25   ───────────────────

26   [7]    The section Plaintiff relies upon states, "[n]o agreement or contract with an Indian tribe
     that encumbers Indian lands for a period of 7 or more years shall be valid unless that agreement
27   or contract bears the approval of the Secretary of the Interior or a designee of the Secretary." 28
     U.S.C. § 81(b).
28

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    25

1    (quoting *In re Sanborn,* 148 U.S. 222, 227 (1893).  Plaintiff's reliance on this statute is

2    misplaced because Section 81 only "govern[s] transactions relative to Indian lands for which

3    Congress has not passed a specific statute."  *Wis. Winnebago Bus. Comm. v. Koberstein,* 762

4    F.2d 613, 618 (7th Cir. 1985).  Here, Congress specifically addressed the exchange in the Act of

5    April 20, 1937. Moreover, under the plain meaning of § 81, the Act is neither an "agreement"

6    nor a "contract;" it is a statute.  As a result, the transaction falls outside the purview of Section

7    81.

8         Moreover, even if this statute established a trust relationship, Section 81 does not

9    "establish the comprehensive management role over Indian affairs that signifies a complete trust

10   with full fiduciary accountability." *Mont. Bank of Circle, N.A. v. United States*, 7 Cl. Ct. 601

11   (1985).  Indeed, as the Court of Claims observed, Section 81 is neither "comparable in purpose

12   or degree to the control or supervision of tribal monies or properties that has been found to

13   establish a complete fiduciary relationship," nor is the system of approval "as comprehensive and

14   detailed as the timber management statutes" implicated in *Mitchell II*. *Id.*

15        Plaintiff also relies upon 25 U.S.C. 177, referred to as the Indian Nonintercourse Act of

16   1790.[8]  The Non-Intercourse Act precludes the extinguishment of Indian title without the consent

17   of the United States.  *See Oneida County, N.Y. v. Oneida Indian Nation of New York State*, 470

18   U.S. 226, 240 (1985).  The purpose of the INIA was to prevent "unfair, improvident or improper

19   disposition by Indians of lands owned or possessed by them to other parties, except the United

20   States, without the consent of Congress, and to enable the Government, acting as parens patriae

21   for the Indians, to vacate any disposition of their lands made without its consent."  *Fed. Power

22   Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 119 (1960).  Its sole function is to void a third

23   party land transaction in the absence of the consent of the United States.  Because Congress

24   expressly consented for the alienation of tribal assets with the passage of the 1937 Act, the Tribe

25

26   _____

     [8]    The Indian Nonintercourse Act of 1790, 25 U.S.C. § 177, provides that "[n]o purchase,
27   grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation
     or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or
28   convention entered into pursuant to the Constitution."

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    26

cannot invoke it as a source of any actionable duty.  Moreover, the INIA cannot serve as a source for an actionable duty against the United States for an additional reason:  The Supreme Court has long held that the Non-Intercourse Act does not apply to actions by the United States.  *See Fed. Power Comm'n*, 362 U.S. at 120 ("[S]ection 177 is not applicable to the sovereign United States.").

Plaintiff's reliance on the Section 2 of the Indian Reorganization Act, 25 U.S.C. § 462 is also misplaced.  In *Mitchell I*, the Supreme Court squarely rejected that Section 462, in conjunction with the General Allotment Act, creates a fiduciary duty.  445 U.S. at 541-42.  Moreover, 25 U.S.C. § 462 does not apply to the original tribal lands that the City now occupies.  25 U.S.C § 462 provides that periods of trust or restrictions on alienation extend "until otherwise directed by Congress."  Congress, however, disposed of any interest Plaintiff had in the original tribal lands with the authorization of the 1941 exchange, thus expressly excluding the original bishop lands from the scope of Section 462.  *See Wolfchild v. United States*, 96 Fed. Cl. 302, 349 (Fed. Cl. 2010)

Finally, the Indian Long-Term Leasing Act, 25 U.S.C. § 415, similarly fails to impose a fiduciary duty outside of the commercial leasing context.  In *Brown v. United States*, 86 F.3d 1554, 1563 (Fed. Cir. 1996), the Federal Circuit concluded that the commercial leasing regime established by 25 U.S.C. § 415(a) and its implementing regulations found at 25 C.F.R. part 162, "impose upon the government a fiduciary duty in the commercial leasing context."  The Federal Circuit qualified this duty, though, and observed that it "does *not* mean that any and every claim by the Indian lessor necessarily states a proper claim for breach of the trust.'"  *Brown*, 86 F.3d at 1563 (quoting *Pawnee v. United States*, 830 F.2d 187, 191 (Fed. Cir. 1987)) (emphasis in original).  "In other words, where no specific statutory requirement or regulation is alleged to have been breached by the Secretary," the claim against the government must fail.  The problem for Plaintiff is that Section 415 is wholly inapplicable, where the City of Los Angeles is not merely leasing the land, but owns the property outright.

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    27

Plaintiff in this case has done nothing more than formulate a broad, ill-defined claim for "breach of statutory and common law trust duties." *See* Am. Compl. ¶¶ 32-34. Indeed, Plaintiff has failed to identify *any* specific statutory or regulatory duties that apply to the original tribal lands at issue, let alone that the United States breached those specific statutory or regulatory trust duties. Plaintiff's failures are fatal to its case. Because the Tribe cannot identify a specific, applicable, trust-creating statute or regulation that mandates the United States remove the City of Los Angeles from its present location, this Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons set forth above, the United States' Motion to Dismiss Plaintiff's Amended Complaint should be granted.

Respectfully submitted, this 6th day of February, 2012.

IGNACIA S. MORENO
Assistant Attorney General

 /s/ Kenneth D. Rooney
KENNETH D. ROONEY
Trial Attorney
United States Department of Justice
Environment and Natural Resources
Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 514-9269
Fax: (202) 305-0506
E-mail: kenneth.rooney@usdoj.gov

OF COUNSEL

Daniel G. Shillito
Regional Solicitor
Department of the Interior

Federal Defendants'
Motion to Dismiss
Civ. No. 1:06-cv-00736                    28

**Certificate of Service**

I hereby certify that on February 6, 2012, I el    ectronically  filed  the foregoing with the Clerk  of the Court using the CM    /ECF  system, which will send notif    ication  of such to the attorneys of record.

/s/                                        Kenneth Rooney
Kenneth                                   D. Rooney